Good morning, Your Honor. May it please the Court, Counsel, I'm Chris Morris from the Basford Brimley Law Firm in Minneapolis, and it's my privilege this morning to present an argument on behalf of the appellants who are Credit Management Services out of Grand Island, Nebraska. It's owner, Michael Morledge, and four of its in-house lawyers, Dana Freese, Jessica Piskorski, Brady Keith, and its General Counsel, Tessa Hermanson, who's here in the courtroom with me behind counsel table. I was hoping that the crowd of onlookers assembled were here to see Ms. Carr and I argue, but apparently some of the earlier cases were. Maybe they just got tired out. Maybe that's, I'll chalk it up to that, Your Honor. At any rate, this is an interlocutory appeal from a class certification under Rule 23B-3, and the class, just to give a general description of it, is made up of persons who are named as defendants in previous collection lawsuits venued in various counties throughout the state of Nebraska, who received certain kinds of complaints and certain kinds of discovery requests. The claim here by the plaintiffs is that CMS and each of the five individuals violated the Federal Fair Debt Collection Practices Act and also the Nebraska State Consumer Protection Act through those pleadings, based on some of the allegations or some of the questions in the pleadings. This, around the time that class certification was argued, the parties extensively briefed summary judgment motions. So that is in the record, but those motions were never ruled on, and after this interlocutory appeal was granted, the court on its own motion stayed the summary judgment motions. So those are all pending, but they may be of interest in terms of they discuss in detail the nature of the claims. We ask that this court vacate the class certification ruling, primarily because there are simply too many individual issues, both as to liability and damages, for the plaintiffs to meet their burden of showing commonality, typicality, and predominance under Rules 23A and B. I intend to focus mostly this morning with my time on the practical issues that are arising under these individual questions, but if time permits, I'll try to touch upon the other objections we have, which is that plaintiffs cannot establish superiority, given the circumstances, or that the named class members are adequate representatives. So turning to the case, in my mind, this is a pretty unique kind of class action, at least in the FDCPA world. Normally what I've seen are cases that are certified as class, or attempted to be a class, involve a form collection letter. Perhaps a collection agency sends out hundreds of letters or thousands of letters that are exactly the same format, all seeking, for example, a collection fee or something like that. There's some defect in them. The defendant named is usually liable across the board to all class members, as opposed to this assortment of individuals who only had involvement in certain class members' cases. And a lot of times you don't see a plaintiff seeking actual damages because that's going to introduce a lot of individual questions. So there are statutory damages permitted under the FDCPA that would lend itself more readily to class action. So this case deviates from that normal scenario quite a bit, and I would highlight the affidavit of Tessa Hermanson that appears in the addendum. You just said there are statutory remedies that make class actions more appropriate? Are you talking about the individual plaintiff's remedies or the class action remedies, or both? A plaintiff under the FDCPA, without regard to actual damages, can recover a statutory remedy on a class basis. On a class basis, which would be... On a class basis, is it still $1,000, but it's limited to 1% of net worth? Well, the class member can get $1,000, but now turning to the class at large, what can they receive? The class member, that's the class at large, unless you're distinguishing the named plaintiff from the class member. That's exactly what I'm doing, Your Honor. You can't say class member, just say named plaintiff. Okay, the named plaintiff can recover $1,000, but the class as a whole, separate from the named plaintiff, can recover up to the lesser of $500,000 or 1% of the net worth of defendant. So if you have a defendant who has a net worth in excess of $50 million, there's a cap of that statutory damage of $50,000. I'm sorry, $500,000. But, for example, if the net worth is much lower, again, then you have to take the 1%. So those are the remedies. So now I don't understand how you say that those remedies make class actions preferable. I thought that that was exactly what, to the contrary, that Judge Doty decided in the, what is it, Sanborn case? The Jones v. CBE group. Sanborn. The Sanborn case is Judge Alsop's case. You're correct, Your Honor. What I mean to say is that plaintiffs often seeking to certify class will not go for actual damages and will just stick to the statutory piece. But if the net worth is not in excess of $50 million, if it's more, if it's relatively low and 1% is almost negligible compared to how many are in the class who would have to split it up, we contend, and Judge Alsop and Judge Doty have ruled, that that scenario makes a class not superior because there's simply nothing of meaning going to any of the class members. I don't understand why you say this only in effect when it's the 1% kicks in. If you've got a class of 1,000 and the class is capped at 500,000, they all get half their remedy, half their statutory remedy, right? Sure. So either half of the cap can make class recoveries inadequate compared to the statutory minimum. Sure. True. So I don't understand your argument. Go ahead. I'm sorry, Your Honor. Turning to the issue about the complaints, why do I say that the class allegation that complaints have provisions about that a 90-day, the claim was presented more than 90 days before the complaint was served or whether the debt was liquidated, entitling CMS to prejudgment interest, those complaints that CMS uses are generated initially from standardized forms, but they're not all identical. The two class representatives we have here, Ms. Powers and then the Palmers, had different complaints. As Ms. Hermanson's affidavit discusses, not every complaint that CMS serves actually seeks interest in the first place. How many individual complaints are there? There are a lot of them, right? The Hermanson affidavit gives the numbers of lawsuits CMS has commenced in Nebraska over the four years of the class period, 07 to 2011. And it's normally just a little above 25,000 lawsuits per year. So using that as a rough number, we could have, bearing in mind that not all of them are necessarily identical or seek interest, but you could use a rough number of you need to look through 25,000 complaints to determine which have the language that's being complained about, which are seeking interest, et cetera. That's going to be a large task, complicated by the fact that CMS doesn't have all their files dating back to 2007. It's saved files since the case was started, but normally it discards files after the matter is done. The other thing that I think is important is we need to find out what happened in those cases. Was it litigated and judgment entered in favor of CMS? Ms. Hermanson's affidavit says most of the cases from the recent period of the class went to a judgment. Were the claims settled? Did the judge make a ruling on this 90-day issue or a liquidated debt issue? All those, I think, are individual issues that the courts are going to need to take a look at. Wouldn't it be a nightmare to have them tried individually from the court standpoint? I'm sorry, Your Honor? Wouldn't it be a nightmare from the court standpoint to have to try each of these individually? That's what I suggest, Your Honor, that it would be. These cases, another thing that makes this class unusual, the class members were litigants, and CMS was a litigant already. So some of these had involved counsel for the debtors. So these cases were litigated, and we're looking at taking a second look at these complaints and seeing what happened, and was interest paid? Was interest properly requested? Does some of it have to be paid back in damages? I just think it's going to take a lot of effort and a lot of work to kind of recreate or reinvent the wheel of what was already litigated. Now, turning to the discovery requests, the plaintiffs allege that there are If first it's class certification denied, then what? If class certification is denied, then? Yeah, then the court has to try 25,000 of them one at a time. Well, if that's presuming that all those litigants decided that they needed to relitigate their case in federal court, I doubt that that number would, in fact, try to do that. I suppose this would be the converse of the death now. If class action is denied, it's the death now for the individual cases because nobody's going to bring them. Well, anyone? Judge Justice Breyer talked in a dissent about the AT&T cases. Who's going to bring a case for $100? Not even the most dedicated public servant lawyers are going to do that. In other words, what you're saying is if class certification is denied, in all likelihood there will not be anything approaching 25,000 cases. There might be 25. Well, yeah, I think it's fair to say there's not going to be 25,000. But where I disagree with the district court is when there's a discussion about the fact that, well, nobody would bring an individual case under the FDCPA for seeking only $100 in damages. The fact of the matter is between zero and $1,000. It's true. You're right. It's up to a difference for the average consumer. Sure. I was referring to an actual damage, but sure. An individual consumer can bring an FDCPA case for up to $1,000 without regard to actuals and then seek whatever actuals they want and, most importantly, seek their reasonable attorney's fees and costs. So, you know, if you read, I think, Judge. And what is it? Again, I'm lost here. What is the basis of their claim here? They didn't get the notice? The claim is that the --. It's not that they don't owe the money, is it? Right. That's not the claim. It's not that they don't owe the money. They allege that --. They didn't get the 90-day notice? No. They allege that in some of the complaints, CMS says a presentment, the claim was presented more than 90 days before this complaint, and, therefore, that triggers prejudgment interest under Nebraska law. The plaintiffs say, you are implying, CMS, that you sent that presentment, that you presented that claim, and you didn't really do it more than 90 days, and, therefore, you misrepresented something in the complaint. The fact is, sometimes CMS makes that allegation in reliance on the fact that the original creditor who assigned the claim to CMS is the one who made that 90-day presentment of the claim. Other times, it is CMS who made the 90-day presentment of the claim. Can you identify a single case in which it did so? Well, I don't think it's contested. Ms. Hermanson's affidavit just summarizes the fact that- Oh, I see. Okay. So CMS, we don't know the number of cases, but in a number of cases, they did send the 90 days, right? Yeah, not for the--. CMS always starts out by sending a letter, you know, complying with the FDCPA request, you know, talking about the debt. But the difference is they don't always use that letter as the 90-day presentment. If the creditor has already sent one, they will reference the date of that notice in their complaint. So, you know, obviously we strongly disagree with the merits of this. We think the statute is perfectly, you know, we perfectly well complied with the statute by relying on the fact that the creditor did it. But even assuming that the plaintiff's allegation is true, we're going to have to then sort through these files and decide which, you know, which claim was presented. In effect, are you in effect arguing that you're asking us to do the rigorous analysis that the district court failed to do? I am suggesting, Your Honor, that the district court failed to rigorously analyze all these things that were raised in the Hermanson affidavit. And for that reason, I think the order ought to be vacated and remanded. You started talking about the discovery request aspect of the case before, I guess, we interrupted you. How does that stand? What's that aspect of the case? Is that a separate class of case? It is. Two of the classes relate to the discovery. The plaintiffs say, you sent us discovery where the instructions were not good enough because they didn't explain fully how we might object to them. And secondly, you asked some questions that were not relevant to the case. So, again. And how is that all going to be worked out on a class action basis? Good question. CMS is going to have to look through its files, determine when it sent discovery. And I argued, Your Honor, that one important fact is whether they served the discovery in an attorney for the debtor or whether they served the discovery on a pro se debtor. And the reason I say that's important, Your Honor, is because this court recently ruled on a case called Hemmingson v. Meserling-Kramer that when pleadings are sent to a lawyer in the context of the circumstances do matter. And it does matter whether the lawyer or the court acted in some reliance on the pleading. And it does matter what the context was. And you need to look at that on a case-by-case basis. In fact, I think are the words of the court in that decision. So we argued that on class certification. The district court responded to that argument by saying, It does not matter at all whether a lawyer was involved or not. I mean, the fact of the matter is the Palmers, two of the class representatives, were represented by counsel. Our discovery was served on counsel, and they responded with some objections. So I think to say that on a cross-the-board basis, all these consumers should be deemed to have been fooled or misled by the discovery that was actually served on their attorney, I think should not make out any kind of claim under the Fair Debt Collection Practices Act, much less the State Consumer Protection Act, that should incorporate some elements of reliance. So I think, Your Honor, that was a failure to rigorously analyze, and also just a plain error of law, as I read the Eighth Circuit law in Hemmingson. I'm almost out of time. I'd like to reserve the rest for rebuttal, if I may. What's the practical way to resolve this? Well, Your Honor, I believe that the court did not error here, and I can tell you why. The practical way is to keep it certified. The record-keeping nightmares that the appellants are now arguing actually are not, in fact, as they say. Let me give you an example. First of all, the appellees don't dispute the question. Start out by telling me how you would determine whether a demand was sent to each class member. Well, I can tell you that they always sue under 25-1801 of the Nebraska Revised Statute. And one of the requirements to get attorney's fees, interest, and cost is that you have to have certain requirements. One is that you have employed an attorney, which, of course, they don't hear. The second is that you have to send a claim for 90 days. If you do those things, you get a judgment, then you can get attorney's fees. Well, their records show a lot of ways of finding out. In the deposition of Tessa Hermanson, when we asked how many were sent, she says they simply run a report. We also took the deposition of a lady by the name of Janice Garrett. That testimony, some of it appears at the end of appellee's brief. Also attached to the end of appellee's brief, she testified that for each account, they have what they call collection notes. And the collection notes is broken down, for example, Nicole Palmer. And it says, and I quote, legal interest zero, legal court cost $82.73, judgment legal fees $90, and interest $46.59. These are things that their computer automatically prints out. So all they have to do is run a report to get that information. In fact, as I was explaining to the court, they can run a report and find out. But they also run monthly reports about how much was collected each month, and they have that broken down. Don't jump to the next thing. 25,000 files of complaints a year, is that what we're talking about now? And so we've got a four-year statute of limitations. Four-year statute. So we're talking about 100,000 complaints. And if you want to know, they've always collected attorney's fees, and the only way they could have was to have pleaded that in their complaints. So they would have always used the complaints. So you don't have to go through all the complaints, Your Honor. I'll tell you why you don't have to go through all the complaints to find out who's in the class. If you look at the evidence in this case, at the end of Volume 1 and the beginning of Volume 2, all of the information, every single case, is on our state equivalent of PACER called Justice. And we actually did this prior to class certification. You'll see, for example, at the end of the Adjoint Appendix Number 1, here is a printout all the way back during the entire class period for all the cases. Would you lower the mic there? Sure. Thank you. Is that better? And then, not only that, Your Honor, we broke it down by attorney. So all of the class members' names are in here. All they have to do to determine who's in the class, basically, is just run the list. It's a very easy thing for them to do. They have lists that they break down monthly. They have lists that they break down by consumer. It's not just was there a company. There are specific violations alleged for every file, right? Was there a 90-day demand? Was there a collection of interest? Is there a state court judgment that would have to be ignored under Rooker-Feldman and preclusion issues and so on? Isn't that unique to every file? No, Your Honor. We maintain, and their answer says, that they never send the 90-day notice. They rely on the creditor's 90-day notice. They always use the opposite of what was said this morning. Correct. And actually, Your Honor, if I can address Testa-Hermanson. So you're saying that that's per se a violation to rely on the creditor's notice? Absolutely. It says that the person bringing the lawsuit has to be the one that sends it because a creditor could send it four or five years before they even get the account. If you want to get attorney's fees, interest, and cost under 25-1801, you have to meet all the requirements. There was a case out of Nebraska. You're talking about the state law claim? Yeah. No, the state law, we say the violation of 25-1801 in the state law is a violation of the Fair Debt Collection Practices Act. And what authority for that? Well, we have Hague v. General Service Bureau in Nebraska cited in our brief. That was also a case brought under Nebraska Revised Statute 25-1801, the identical statute. There the court certified that case and granted summary judgment after that for the plaintiffs saying that they didn't meet all the requirements of 25-1801 before they were collecting attorney's fees, interest, and cost. So that's what we have here. And with regard to Ms. Hermanson's affidavit, I want to point out that prior to her affidavit, the record shows a deposition of Tessa Hermanson taken in October, I believe it was 2012, prior to the class action motion being filed. At that time, I will go through the record, Ms. Hermanson testified at that deposition that this complaint that they used for 25-1801 relief where they get attorney's fees has been used the entire time she's been there from 2008 and that it is used by all the attorneys there. And they always have to plead those things, so we don't have to go through all the complaints. Everybody they sued is a member of the class. She also testified that it's a standard form, and she testified the same way, that the discovery is a standard form as well, and that all they have to do is run a report to get the information to determine how many people are in the discovery violation class and the complaint class. And that is not a tedious thing. The testimony is that they have five computer IT guys, 180 employees, and that the IT guys were actually able to run a report to determine who was going to be, for example, in the second class pertaining to the discovery. Because even though they may vary questions, the testimony was the three discovery questions that we challenged were used by every lawyer from the time they were there. So we have a common question of law or fact, and that is whether the standard complaints and the standard discovery violate the FDCPA. Was there an attempt by anybody there in the district to settle the cases? I'm sorry? Was there an attempt by any court personnel to settle the cases? You mean to settle the FDCPA, this lawsuit here? Yes. There was not. A plaintiff made an overture to settle, did not get settled. Under the Act, is it true that a claimant has to show that he or she was injured in her business or property? That is the wording of the statute. And how do you determine that on a class-wide basis? What the court said in Hague v. General Service Bureau, which is also brought under 25-1801 in that statute, is that basically anybody who had actual damages would be damaged in their property. And the mere fact that damages vary from one person to another does not defeat certification. They rely on, for example, MUND out of the District of Minnesota for that proposition. Now, remember the NCPA, the state claim, also allows for up to $1,000 per person as well. So the class members are actually getting more of a benefit through the class action than they would be through any individual case on that. So what I'm telling you is if you look at the deposition of Tessa Hermanson that was taken prior to the time we filed our class complaint, she alleges and she concedes basically these were all standard forms. They always suit under that statute, 25-1801, where they have to show that they had a lawyer retained, where they have to show that they send a 90-day notice for the medical bills. Every lawyer used that. So we have a common question of law or fact, and that is, did these forms violate the FDCPA and the NCPA? And that would apply to all lawyers. And so, Rudy, the essence of your claim is what? That they didn't give the 90-day report? The essence of our claim is twofold. One is with regard to collecting attorney's fees, the only statute that allows you to collect attorney's fees in Nebraska is Nebraska Statute 25-1801. And in the Haig case that was 2002, the court says strict compliance. You have to show this. They file an answer in this case that say we don't send it, we rely on the original creditor, that we say is a violation. Because that's a violation, then we believe it's a violation of the Fair Debt Collection Practices Act to collect attorney's fees that are not expressly permitted by law, and it would not be permitted by the state law if they didn't meet those requirements. That's what we are saying. And this is something that they do across the board. Now, Hermanson's affidavit is interesting. It is completely contrary, as we set forth in our brief, to everything she says in her deposition. She says, oh, we use other complaints. They've never come forward with a single different complaint that they use in this case, and they can't because the only way they can get the attorney's fees, interest, and cost is if they plead the standard language that we're challenging. And as I was mentioning before, we did a justice printout, our state court equivalent, and we polled a number of the complaints across the state of Nebraska. Every single one of them, as you can see, they're attached at the beginning of the appendix in Volume 2. Every single one of them from every single lawyer were identical. The only difference was the name of the creditor, the amount, and the name of the consumer they were suing. So we don't have a large number of different complaints here. What you don't see in the record is any of the lawyers coming forward saying, I personally don't use this complaint. I personally use something else. I've changed the complaint, not a single one. What you also don't see in the record is any other sample of a complaint that they contend they used. You don't see any other discovery request being used. You know, there's no record of anybody, none of the lawyers. You have Tessa Hermanson saying those three discovery questions were used since 2008 when she was there. What would be the effect and what's the plaintiff's view of the effect of any of these that went to judgment in state court? We are not asking for the court to vacate county court cases. Our relief is basically violation of the FDCPA. So the effect of the judgment would stay. We're not trying to overturn judgments in county court. We did not pray to overturn those judgments. But wait a minute. You're saying that the attorney's fees and interest were illegally collected. We're saying that the violation occurred at the time the complaint was filed when they asked for it and didn't meet the required, you know. But the state court judgment, if it approved interest and attorney's fees, categorically rejected that. Might have been on a default, but we're not saying. It doesn't matter under preclusion and Rooker-Feldman. I think that case we also had was Jenkins versus General Credit Systems, where the court had held that Rooker-Feldman doesn't apply because we don't have a collateral attack on a judgment. What we have here is a focus on the FDCPA violations. Sure. I think it's in Appellant's brief. It's Jenkins versus General Credit Company from the District of Nebraska. In that case, there was a class action brought for statute of limitations involving credit card debts. Before or after our Fielder decision? Before or after what? Fielder. Well, Jenkins would have been in 2008. When was Fielder? About then. And so what happened? Sounds contrary to Fielder. Well, what I can tell you is that I think Judge Battaglione is correct that we're not asking the court to do anything with the county court judgments. We're asking the court to award damages if there is some. Statutory damages would still be something that can be awarded, even assuming that there's no actuals. If you're wrong on that, now we're talking about a very complex inquiry, right? We have to go through these 100,000 files to see which ones. Not really. Then we have to look at the judgment to see whether the judgment upheld attorney's fees. I mean, how can that not be the case? Well, what you would do, again, is you would look at their individual printouts, which they run monthly and weekly, where they say, you know, in this particular case, we have a printout where it shows exactly how much the attorney's fees that were collected. They actually have computer programs that show this amount for attorney's fees, this amount for interest. If you can't get the attorney's fees under- But does it show whether it went to judgment? You can't get attorney's fees under 25-1801 unless there's a judgment. So you would have to have a judgment to get attorney's fees. So every one of these is a collateral attack on a state court? It's either, well, the court would have to decide whether or not the collection complaints violate the FDCPA. It would be across the board one way or another. But we do not believe it's a collateral attack on a county court judgment. What we're asking for is statutory damages under the NCPA. We're also asking for an injunctive relief, which is provided specifically under the NCPA, and any actual damages. What happens in the county court basically is going to remain the way it is in the county court. Sure. You know, that's not- It doesn't matter under Rooker-Feldman. That's what they said. Plaintiffs and fielders said, oh, well, we're not asking the federal court to set aside those state court judgments. Just ignore them. We're asking for the court and the district court to award whatever actual damages there are as a result of them using this discovery and the county court complaints that they're using. As a result of collecting interest and attorney's fees, right? Correct. Which the state court upheld. Assumedly. It's in the judgment. I don't care. I don't think default matters under preclusion principles. Well, we had briefed that Rooker-Feldman issue previously and in our brief, as well as res judicata. And I don't think that the court erred in that determination. Now, what we're looking for is a relief under the FDCPA actual damages or statutory damages. You can still have statutory damages under the FDCPA. Now, where is this state court preclusion ruling? What's that? You just said that the district court correctly ruled on the preclusion issue. Is that in- In Judge Battalion's order, which is part of this case. In the class determination. Where he was saying that it's not a matter of res judicata and that we're not asking to overturn the judgments. And I believe him to be correct. That issue, of course, is not. Is that right for appellate review? I do not believe that it's- If that's essential to upholding the class certification. I don't know that it's essential because you can still have statutory damages, no matter whether you collect the actual or asking the court to return the money back. Not for conduct that the state court has upheld. You can get statutory damages if the court determines that their complaint violates the FDCPA and that the discovery violates the FDCPA. You're just begging the preclusion question. We take the position that the violation occurred at the time that the complaint was filed. What happens after that is irrelevant as far as the violation occurred. What happens is we believe that certification is proper. A lot of the courts, for example, will say it doesn't matter what the response is or whether they had a lawyer or anything else. The violation occurred at the time the complaint was filed. As a matter of looking ahead procedurally, suppose if we affirm what's going to be your burden when you go back to trial? You'll have to subdivide these classes? There's a number of management techniques that the court has. With regard to damages, with the printout, they would just be able to determine damages. There would be a certain amount, but there wouldn't be very many. We would already know who's in the subclasses from the justice printout. In a way, you're saying it's not an unmanageable class. No, it's not an unmanageable class. As Judge Battaglione pointed out, the judicial economy argument weighs for superiority of a class action because without the class action, given the large number of cases we have here, he believed that to be more unmanageable than having a class action, which is uniquely designed to handle these little cases that may not otherwise be brought. From a superiority standpoint, Rule 23B would be the best way. What about those cases where they're raising collection problems? I'm sorry? Where they're disputing the amount of collection? For example? What do you mean where they're disputing? How is this going to be handled in a practical way if it goes back? I think if it goes back and it goes back certified, then there would be a determination by the court, probably on summary judgment, what violated the law and what didn't. If we get to the damages standpoint, the court would determine who gets actual damages and how much they get. In cases like MUND versus EMCC, the district court said, well, maybe you want to have individual determinations of that, but that doesn't bar class certification. So all they'd have to do is run their reports, which they have, that shows how much everybody would get back. They would also get statutory damages under both the NCPA and the FDCPA. Why didn't they do all of that at the time that you were in there? Did they just throw up their hands and not want to deal with it? Who are you referring to, they? I'm talking about the court. Why didn't the court do it at the time? Well, I think the court believed that there was a common question of law and fact and decided that damages were for a later time, that damages isn't one of the things that the court needed to determine at the time of class certification. It needed to determine the elements of Rule 23. And then, you know, upon certification, damages would be determined at a later date. Very well. We thank you for your argument. You're welcome. Mr. Morgan. Good morning. I just want to make a few points in reply here. I think I don't believe that the Hermanson Affidavit contradicts her deposition testimony. I think there's just a misreading. Yes, the workflow is such that the group of in-house lawyers use and have used standardized-type forms over time, and that is what the testimony is. Those have been in effect for a while. But that's not to say that the forms can't and sometimes are modified in certain ways. In the discovery, for example, the testimony is that sometimes a question is taken out or done differently. So, you know, it may be by and large that these are standardized, but we're still going to need to see what was actually done. That brings me to the point about the 20 separate subclasses that I think need to be ultimately done here to proceed against four different in-house lawyers. The workflow is not that one attorney is assigned to handle a particular case for the life of the case. The workflow at the company is that an attorney who's got time that day handles the items that are up for review that day. So if an answer comes in on a particular complaint, even though they didn't draft the complaint, they might look at the answer and decide, are we going to send discovery out or whatnot? And if so, that attorney will then sign that discovery. These group of four attorneys, some of them were not even employed. Most of them were not employed at the company going back to 2007. And as I said, they're not all going to have been involved in every case. Why do we have these individual defendants? Why? I don't know why the plaintiffs named all four individual defendants. They were all involved in some way or fashion along the line in the Powers and the Palmers cases. Mr. Keith wasn't involved in drafting the complaint or discovery, but he came in later on some hearings. So my point is this, Your Honor, that it can't be the law that if Tessa Hermanson joined the company in 2009 or whatever it was, that she can be liable for something that was done in 2007. It can't be the law that she is liable for a complaint that she didn't know about and didn't sign. So I think the court is going to have to go through and decide, not that each four are liable to the whole four classes as certified, but what part of which class members might be able to recover from each attorney. And that, to me, is extremely complicated. The district court's decision said this, well, we could use subclasses in the future, and that's really an issue that can be sorted out at trial. And I say, Your Honors, that that is the kind of issue that needs to be rigorously analyzed at the class certification stage. And if there need to be separate subclasses, that needs to be grappled with and thought about now, not wait to trial. Afterwards, should we remand this to the district court for more careful analysis? Well. I'm sure that's not your preferred outcome. That's not my preferred outcome, but that would be. Maybe I shouldn't even have brought it up. Thank you for your arguments. Thank you, Your Honor. The case is submitted, and we will take it under consideration, and now the court will be in session.